UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ESTRADA,<br><br>            Plaintiff,<br><br>     v.<br><br>TASSEY, et al.,<br><br>            Defendants. | Case No.: 1:13cv00919 DLB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDNTS<br><br>THIRTY-DAY DEADLINE |

Plaintiff David Estrada ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action. Plaintiff filed his complaint on June 17, 2013. The Court dismissed the complaint with leave to amend, and Plaintiff filed a First Amended Complaint on August 8, 2013. On September 3, 2013, the Court issued a second screening order requiring Plaintiff to either file an amended complaint or notify the Court of his willingness to proceed on the cognizable claims.

On September 11, 2013, Plaintiff notified that Court that he would proceed on the cognizable claims. Accordingly, the Court now issues Findings and Recommendations to dismiss the remaining claims and Defendants. Plaintiff will be instructed on service by separate order.

**A.   LEGAL STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### B.     PLAINTIFF'S ALLEGATIONS

Plaintiff is incarcerated in Corcoran State Prison and is housed in the Segregated Housing Unit ("SHU"). Plaintiff is serving an indeterminate SHU term because he was validated as an associate of the Mexican Mafia and classified as an inactive associate.

By way of history, Plaintiff explains that prior to his validation, the Institutional Classification Committee ("ICC") improperly applied a "custody designation" after reviewing his juvenile record. This created a safety issue and Plaintiff began writing letters to validated gang associates to ask for a "pass." These letters were used in his validation packet. Plaintiff has made several attempts to debrief since 2005. Over the years, Plaintiff contends that he was being targeted by his documented enemies and that Institutional Gang Investigators ("IGI") were aware of this, yet never intervened.

Plaintiff alleges that Defendants Musselman and Garcia are IGIs and monitor security threats with the SHU. On April 21, 2011, Plaintiff requested rehousing after a prison gang associate in his building began a dispute. Plaintiff was interviewed by IGI and asked if he wanted to debrief. Plaintiff elected to debrief and Defendant Garcia instructed him to write a detailed autobiography. Plaintiff did so and was rehoused. Plaintiff alleges that Defendant Musselman asked him for more details and provided Plaintiff with a list of questions. Plaintiff answered the questions and included information that was required in order to be released from the SHU. Defendants Musselman and Garcia asked Plaintiff for more information, claiming that Plaintiff had been on the yard a long time and should know more. Plaintiff felt like a snitch and thought he was being targeted.

Plaintiff was moved to the debriefing building on May 17, 2011. On August 5, 2011, Plaintiff was interviewed by Sgt. Medina and told that his autobiography was incomplete and that he had to write another one. Plaintiff did so, and then learned that that he would be attending an Institutional Classification Committee ("ICC") hearing for a program change. He did not get 72 hours to prepare.

On September 7, 2011, Plaintiff attended the ICC hearing and Defendant Associate Warden Lambert decided to return Plaintiff to the 4B Yard and house him around his documented enemies. Plaintiff had told Defendant Lambert that he had enemies on 4B. Plaintiff also told Defendant

3

Lambert that he was not provided with 72 hours to prepare for the hearing. Plaintiff contends that the program change was an adverse action since he was returned to housing with his enemies and those he had debriefed on. Defendant Lambert told Plaintiff that he didn't need 72 hours, and that he shouldn't worry because he would be in a single cell.

Plaintiff returned to his cell and saw Defendant Garcia, who accepted Plaintiff's autobiography and said he would write a chrono. On September 15, 2011, Plaintiff was rehoused and on November 4, 2011, the Investigative Services Unit ("ISU") started an investigation on Plaintiff.

Plaintiff started receiving threats on his life and the lives of his family members. The threats were written on a "kite" and Plaintiff provided it to staff. The threats increased and Plaintiff sought out protection for him and his family. On or around January 22, 2012, Plaintiff told Defendant Sgt. Espinosa of his need for rehousing. She had handled his earlier complaint when he was threatened, and told Plaintiff that she had sent it to ISU. Plaintiff alleges that she rehoused him, disregarding his safety concerns and threats against him and his family. She also had Defendant C.O. Rodriguez collect his property and Defendants Espinosa and Captain J. Castro placed Plaintiff on property restriction for asking for protection after he was threatened by gang associates.

On January 24, 2012, Plaintiff was moved to the 4A Yard. He re-entered the debriefing program on or around February 2012.

Plaintiff alleges that on July 12, 2012, Defendant C.O. Rodriguez took Plaintiff out for medical treatment. He was first taken to a hospital that did not have the correct equipment, and while there, Defendant Rodriguez made comments to Plaintiff in an attempt elicit a reaction. Plaintiff ignored her. He was transferred to another hospital and was waiting on a hospital bed, in pain, when Defendant Rodriguez called Plaintiff a rat and asked if he wanted some cheese. Plaintiff watched Defendant Rodriguez "text on her cell phone the entire trip. . ." Plaintiff was shocked that she made reference to his protected conduct and felt compromised and unsafe.

Plaintiff alleges that on July 14, 2012, Defendant L.V.N. Savermilch disclosed his mental health information in the presence of inmates. While she was passing out medications, Defendant

4

Savermilch made reference to confidential issues pertaining to mental health treatment and sessions with a psychologist.  Plaintiff states that as a result, inmates started playing games with him, disrespecting him and embarrassing him.  Plaintiff filed a Health Care Appeal but did not receive any relief or a guarantee that his medical records would be confidential.  Plaintiff contends that Defendant Savermilch violated his right to privacy and caused a "pattern of retaliation and harassment" from CSP employees.

On August 8, 2012, Defendant L.V.N. Gonzalez denied Plaintiff his medications in the morning in retaliation for filing inmate appeals against her co-workers.  She also called Plaintiff a rapist and a stalker.  Plaintiff alleges that she has violated his right to have his juvenile file kept confidential.

Also on August 8, 2012, Plaintiff attended ICC for a program change and was removed from the debriefing program for receiving a CDCR-115 for a weapon he gave to staff.  He informed Defendant Chief Deputy Warden J. Cavazos of his safety concerns and the threats from Mexican Mafia associates on the 4B Yard.  Plaintiff asked not to be returned to that yard and Defendant Cavazos understood that Plaintiff would be targeted.  Plaintiff alleges that Defendant Cavazos was deliberately indifferent to Plaintiff's safety concerns by having him housed around his documented enemies.

On August 8, 2012, Plaintiff was escorted to the 4B-1R Building and placed in a holding cage in the rotunda.  He sat down and asked to speak to staff.  Defendant Sgt. Vogel approached the cage and Plaintiff explained his safety concerns with the Mexican Mafia and told him that his family had been threatened.  Defendant Vogel stated, "Fuck you and your family" and threatened Plaintiff by pointing his pepper spray can at him.  Defendant Vogel left to report the issues he was having with Plaintiff to Defendant Captain Castro.  Plaintiff was placed on management status/strip cell as a form of punishment by Defendant Castro and denied yard, showers, toilet paper and soap.

Plaintiff went to an outside hospital and upon his return, had an interview with Defendants Vogel and Castro on August 10, 2012.  They elected to keep Plaintiff on strip cell and claimed that he

was being disruptive. Plaintiff contends that this resulted in injuries on August 14, 2012, from Defendant Vogel.

Plaintiff alleges that Defendant Warden Gipson has been aware of Plaintiff's filing of an inmate appeal related to an employee who provided inmates with (1) letters that he had written, and (2) his family members' addresses. Plaintiff contends that the employee did so in an effort to have inmates discipline him. The letters included descriptions of his participation in the debriefing program and information about specific inmates. Plaintiff alleges that Defendant Gipson handled Plaintiff's inmate appeal, and that Plaintiff had requested that the appeal be confidential because his life was in danger. Plaintiff contends that he has safety concerns related to prison gangs and informed Defendant Gipson of this by notifying the IGI, ISU and the Office of Internal Affairs. However, Plaintiff has been met with acts of retaliation and threats from inmates.

Plaintiff contends that he has been denied his requested protection and has been housed around his documented enemies. He alleges that Defendant Gipson has been aware of the substantial risk of harm that he faces as a result of his providing information that has compromised his identity as a confidential informant. Plaintiff further states that Defendant Gipson knew that he was being retaliated against, but failed to remedy the situation. Specifically, Plaintiff contends that staff members who have been named in his complaints are intentionally exposing him to danger. He is also being harassed, denied medical treatment and denied the right to file additional appeals.

Plaintiff has been submitting inmate appeals addressing property loss and threats, but his appeals always get lost, thrown away or improperly screened out. In March 2013, Plaintiff was housed in the 4B Yard again and those staff who retaliated against him were encouraging inmates to target Plaintiff. IGI told Plaintiff that they were not willing to help him.

Plaintiff alleges that Defendants Beard and Cate are responsible for his overall well-being and protection.

**C.    DISCUSSION**

    1.    Conspiracy

        a.    *42 U.S.C. § 1983*

To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an agreement or a meeting of the minds to violate his constitutional rights, and an actual deprivation of those constitutional rights. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001).

The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to Plaintiff's allegations of conspiracy. Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted). A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Id. at 1964-65 (internal quotations and citations omitted). As such, a bare allegation that Defendants conspired to violate Plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

Here, Plaintiff has presented a detailed narrative of his version of events over a two year period. However, his allegations are presented more as individual stories rather than a unified series of events. As such, Plaintiff fails to show, or even allege, the requisite agreement or meeting of the minds necessary for a conspiracy claim under section 1983.

        b.    *Section 1985*

To state a claim under section 1985(3), Plaintiff allege sufficient facts showing "a deprivation of a right motived by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'" RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir. 2002) (quoting Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992)). "'The

7

conspiracy . . . must aim at a deprivation of the equal enjoyment of rights secured by the law to all.'" Orin v. Barclay, 272 F.3d 1207, 1217 (9th Cir. 2001) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)) (emphasis omitted).

A claim for violation of section 1985(3) requires the existence of a conspiracy and an act in furtherance of the conspiracy. Holgate v. Baldwin, 425 F.3d 671, 676 (9th Cir. 2005) (citing Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992)). A mere allegation of conspiracy is insufficient to state a claim. Id. at 676-77.

Here, Plaintiff has again failed to allege specific facts to support his allegation that Defendants conspired together, and he has wholly failed to allege any racial or class-based discriminatory motive.

      c.   *Section 1986*

"Section 1986 authorizes a remedy against state actors who have negligently failed to prevent a conspiracy that would be actionable under § 1985." Cerrato v. San Francisco Cmty. Coll. Dist., 26 F.3d 968, 971 n.7 (9th Cir. 1994). Plaintiff may not pursue a claim for relief under 42 U.S.C. § 1986 unless he has first stated a claim for relief under section 1985. McCalden v. California Library Assoc., 955 F.2d 1214, 1223 (9th Cir. 1992).

As discussed in the preceding paragraph, Plaintiff's amended complaint does not contain a cognizable claim for relief under section 1985. Accordingly, Plaintiff's amended complaint also fails to state a claim for relief under section 1986.

    2.   Right to Privacy

Plaintiff alleges a violation of his right to privacy against Defendants Gipson and Savermilch for disclosure of his medical and/or mental health records. He cites the First and Eighth Amendments as the source of this right.

However, courts have generally found that prisoners' rights to informational privacy in their medical records, if any, arise under the Fourteenth Amendment. See Seaton v. Mayberg, 610 F.3d 530, 537-39 (9th Cir.2010). The Fourteenth Amendment provides a limited right to medical privacy to an inmate, subject to legitimate penological interests. Seaton v. Mayberg, 610 F.3d 530, 534-535 (9th

8

Cir. 2010). In making the determination whether the governmental interest outweighs the individual's privacy interest, courts must balance the following factors: (1) the type of information, (2) the potential harm in non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access. Tucson Woman's Clinic v. Eden, 379 F.3d 531, 551 (9th Cir. 2004).

As to Defendant Savermilch, Plaintiff alleges that she made specific statements in front of other prisoners that related to his mental health treatment. According to Plaintiff, she said, "stop listening to those voices in your head" and "don't do what they are telling you." Compl. 12. Plaintiff states that a former employee accessed his mental health records and suggests that the employee passed on the information to Defendant Savermilch. Plaintiff contends that this led to inmates disrespecting him, playing games with him and embarrassing him, and Plaintiff had a difficult time dealing with this.

Given the limited nature of the right to privacy in the prison context, the Court finds that Plaintiff does not state a cognizable claim. He speculates that Defendant Savermilch received information from a former employee, and her statements do not appear to be a definitive disclosure of medical records. In other words, it would not be clear to an inmate hearing this information that the statements related to Plaintiff's medical treatment.

As to Defendant Gipson, Plaintiff makes no allegations that she directly divulged any medical information. Insofar as she reviewed Plaintiff's appeals, her actions on his appeals did not cause or contribute to any underlying violation and he cannot state a claim against her. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted).

    3.    First Amendment Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d

802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

### a. *Defendants Musselman and Garcia*

Plaintiff's factual allegations against Defendants Musselman and Garcia relate to their instructions on the debriefing process. Although Plaintiff states that he felt like a snitch when they asked for more information, there is no indication that Defendants Musselman or Garcia took any adverse action against him and he fails to state a claim against them.

### b. *Defendant Rodriguez*

Plaintiff contends that Defendant Rodriguez retaliated against him when she called him a rat and asked if he wanted some cheese. Plaintiff watched Defendant Rodriguez "text on her cell phone the entire trip. . ." Plaintiff states that he was shocked that she made reference to his protected conduct, and he felt compromised and unsafe. Her alleged statements, however, are not a sufficient adverse action to support a claim for retaliation.

### c. *Defendant Espinosa*

Plaintiff alleges that he told Defendant Espinosa that he needed to be rehoused, but she disregarded his safety concerns. He also alleges that because he asked for protection, Defendant Espinosa ordered that his property be collected and that he be placed on property restriction.

The Court finds that Plaintiff has stated a retaliation claim against Defendant Espinosa.

        d.    *Defendant Vogel*

Plaintiff alleges that Defendant Vogel retaliated against him when, in response to expressing his safety concerns, he said, "Fuck you and your family" and pointed his pepper spray can at him. His verbal statements and pepper spray threat, however, are not a sufficient adverse action.

Plaintiff therefore fails to state a claim of retaliation claim against Defendant Vogel.

        e.    *Defendant Gonzalez*

Plaintiff contends that Defendant Gonzalez denied him medications on the morning of August 8, 2012, and called him as a rapist and a stalker in retaliation for his complaints against staff. These allegations, without allegations of a chilling effect or harm, are too vague to rise to the level of an adverse action.

Plaintiff therefore fails to state a claim against Defendant Gonzalez for retaliation.

        f.    *Defendant Gipson*

Plaintiff's allegations against Defendant Gipson are based on her role in reviewing Plaintiff's appeals. He alleges, however, that she knew of the retaliation and failed to stop it. A supervisor may be held liable if she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff has stated a retaliation claim against Defendant Gipson.

4.    <u>Eighth Amendment</u>

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the

Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations and quotations omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009).

      a. *Defendants Beard and Cate*

Liability may not be imposed on supervisory personnel under the theory of respondeat superior, Iqbal, 556 U.S. at 676-77, and as administrators, Defendants Beard and Cate may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff only alleges that Defendants Beard and Cate are responsible for his well-being. He has not alleged any facts, however, demonstrating that they participated in, or knew of and failed to prevent, any of the alleged violations. Plaintiff has therefore failed to state a claim against Defendants Beard and Cate.

      b. *Defendant Rodriguez*

Plaintiff's allegations against Defendant Rodriguez are based on his allegation that she called Plaintiff a rat, and that this made him feel compromised and unsafe. This, however, is not a sufficient deprivation to support an Eighth Amendment claim.

   c. *Defendant Espinosa*

Plaintiff alleges that he told Defendant Espinosa that he needed to be rehoused, but she disregarded his safety concerns. Construed liberally, and based on Plaintiff's claim that he was subject to threats from other inmates, the Court finds that this states an Eighth Amendment claim against Defendant Espinosa.

   d. *Defendants Musselman and Garcia*

Plaintiff's allegations against Defendant Musselman and Garcia relate only to their asking questions on debriefing. Although Plaintiff stated that he felt like a snitch and felt targeted, these allegations are insufficient to state an Eighth Amendment claim against Defendants Musselman and Garcia.

To the extent that Plaintiff contends that Defendants Musselman and Garcia denied him "confidentiality protections," his allegation is too vague to state a claim. If Plaintiff is contending that Defendants Musselman and Garcia told inmates that he was a confidential informant, he does not allege facts to support this allegation.

   e. *Defendant Castro*

Plaintiff alleges that on August 8, 2012, Defendant Castro placed Plaintiff on "management status/strip cell," and denied him yard, showers, toilet paper and soap as a form of punishment for expressing his safety concerns. On August 10, 2012, Defendant Castro elected to keep Plaintiff on strip cell.

While denial of outdoor exercise and personal hygiene supplies can state a claim under the Eighth Amendment, Plaintiff's allegation that Defendant Castro denied him yard, showers, toilet paper and soap are insufficient to state a claim. Without additional facts, such as the length of time he was without exercise and/or hygiene supplies, Plaintiff has not stated an Eighth Amendment claim. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotation marks and citations omitted).

Similarly, the Court is unable to determine the nature of "management status/strip cell" and the length of time he was subject to "management status/strip cell."

Accordingly, Plaintiff's claims against Defendant Castro are too vague to support an Eighth Amendment claim.

    f.  *Defendant Vogel*

On August 8, 2012, in response to Plaintiff's expression of his safety concerns, Defendant Vogel stated, "Fuck you and your family" and threatened Plaintiff by pointing his pepper spray can at him. Defendant Vogel was also involved in the decision to keep Plaintiff on strip cell, and Plaintiff alleges that his led to an unspecified injury by Defendant Vogel.

Defendant Vogel's verbal statements do not state a claim under the Eighth Amendment. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir.1987). Similarly, his single act of threatening Plaintiff with his pepper spray can does not rise to the level of an extreme deprivation.

Finally, although Plaintiff alleges an injury by Defendant Vogel, his failure to provide more specific facts regarding the alleged incident renders his claim insufficient.

Plaintiff therefore fails to state an Eighth Amendment claim against Defendant Vogel.

    g.  *Defendant Lambert*

Plaintiff alleges that on September 7, 2011, Defendant Lambert decided to return Plaintiff to the 4B Yard and house him around his documented enemies despite his knowledge of Plaintiff's safety concerns.

Liberally construed, this states an Eighth Amendment claim against Defendant Lambert.

    h.  *Defendant Cavazos*

Plaintiff alleges that on August 8, 2012, he informed Defendant Cavazos of his safety concerns and the threats from Mexican Mafia associates on the 4B Yard. Plaintiff asked not to be returned to that yard and Defendant Cavazos understood that Plaintiff would be targeted. Despite this, Defendant Cavazos housed Plaintiff around his documented enemies.

Liberally construed, this states an Eighth Amendment claim against Defendant Cavazos.

### i. *Defendant Gonzalez*

Plaintiff alleges that on August 8, 2012, Defendant Gonzalez denied Plaintiff his medications in the morning in retaliation for filing inmate appeals against her co-workers. She also called Plaintiff a rapist and a stalker.

Defendant Gonzalez's verbal statements are not sufficient to state an Eighth Amendment claim. Similarly, a single incident of failing to give Plaintiff his medication does not rise to the level of an extreme deprivation.

Plaintiff therefore fails to state a claim against Defendant Gonzalez.

### j. *Defendant Gipson*

Plaintiff's allegations against Defendant Gipson are based on her role in reviewing Plaintiff's appeals. He alleges, however, that she knew of the safety concerns and failed to remedy the housing situation. A supervisor may be held liable if she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff has stated an Eighth Amendment claim against Defendant Gipson.

### 5. Fourteenth Amendment

Plaintiff often groups the Fourteenth Amendment in with his claims under the First and Eighth Amendment. However, other than the privacy claim, Plaintiff's claims are governed by either the First or Eighth Amendment and will not be discussed in the context of the Fourteenth Amendment.

### D. FINDINGS AND RECOMMENDATIONS

The Court finds that Plaintiff's complaint states the following cognizable claims: (1) retaliation in violation of the First Amendment against Defendants Gipson and Espinosa; and (2) violation of the Eighth Amendment against Defendants Gipson, Espinosa, Lambert and Cavazos.

It does not state any further claims against any other Defendants. Accordingly, the Court finds that all other claims, as well as Defendants Savermilch, Musselman, Garcia, Rodriguez, Vogel, Gonzalez, Beard, Cate and Castro.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and Recommendations, Plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **September 19, 2013**            /s/ *Dennis L. Beck*
                                    UNITED STATES MAGISTRATE JUDGE